[No. 11017. Department Two. July 10, 1913.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER COLUMBUS, *Appellant*.[1]

PROSTITUTION—ACCEPTING EARNINGS OF PROSTITUTE—INFORMATION. An information charging defendants with accepting the earnings of one M. B., a common prostitute, charges the offense practically in the language of the statute, Rem. & Bal. Code, § 2440, making it unlawful to live with, or accept any earnings of, a common prostitute, and is sufficient.

INDICTMENT AND INFORMATION—DUPLICITY. An information charging two persons with accepting the earnings of a common prostitute is not duplicitous when it charges both with a single crime.

WITNESSES—IMPEACHMENT. On cross-examination of a prosecutrix, on a prosecution for accepting the earnings of a common prostitute, evidence that she had subsequently lived with another man and paid him all her earnings is not admissible to impeach her testimony, she having admitted that she was a common prostitute.

SAME. Such evidence is not admissible on the theory that she was endeavoring to shield the other man, as her motive for testifying against the accused.

PROSTITUTION — ACCEPTING EARNINGS OF PROSTITUTE — EVIDENCE—CORROBORATION—SUFFICIENCY. On a prosecution for accepting the earnings of a common prostitute, corroboration of her testimony, within the requirement of Rem. & Bal. Code, § 2443, by another prostitute is sufficient; especially where other witnesses testified to payments and other circumstances tending to show the relations charged.

SAME—ACCEPTING EARNINGS—ELEMENTS OF OFFENSE. One renting rooms to a common prostitute is guilty of accepting her earnings, within Rem. & Bal. Code, § 2440, where, in addition to the room rent, he was paid a specific sum for the privilege of each act of prostitution committed on the premises.

CRIMINAL LAW—NEW TRIAL. Passion or prejudice, warranting a new trial, is not shown by the fact that the jury believed the evidence of the state, rather than conflicting evidence for the defense, where there was evidence to establish every element of the crime charged.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered June 25, 1912, upon a trial and

[1] Reported in 133 Pac. 455.

conviction of accepting the earnings of a prostitute.    Affirmed.

*Coleman & Gable* and *Hurd & Hilen*, for appellant.

*Augustus Brawley*, for respondent.

ELLIS, J.—The defendant was charged with the crime of accepting the earnings of a prostitute.  The charging part of the information was as follows:

"That in Skagit county, state of Washington, and between the first day of December, 1911, and the first day of May, 1912, the said defendants, Christopher Columbus and Billie Liaskos, then and there being, did unlawfully and feloniously accept the earnings of one Mary Blakely, she, the said Mary Blakely, then and there being a common prostitute."

The defendant demurred to the information, and the demurrer was overruled.  He then pleaded not guilty and demanded a separate trial, which was accorded.  At the close of the state's case, the defendant challenged the sufficiency of the evidence and asked an instruction of not guilty, which was denied.  The evidence adduced by the state at the trial and relied upon for the conviction was, briefly, as follows.  The defendant Columbus and his codefendant in the information, Liaskos, both natives of Greece, were cousins and partners conducting a restaurant and rooming house in Sedro-Woolley, Skagit county.  The prosecuting witness, Mary Blakely, an admitted prostitute, testified that she rented a room in this place from about December 15, 1911, to March 31, 1912, paying the defendant and his partner therefor $7 a week; that much of the time while she was there another prostitute shared the room with her, also paying therefor to the defendant and his partner $7 a week; that the prosecuting witness plied her vocation by frequenting, in the afternoons and evenings, the boxes in the defendant's restaurant, and when men came in had drinks with them from an adjoining saloon, took them upstairs and practiced prostitution with

them for money; and that the defendant and his partner were paid for each man so accommodated a stipulated sum in addition to what she received; that the defendant sometimes brought men back to the boxes and introduced them to the prosecuting witness; that all of this was in pursuance of an agreement with the defendant Columbus and his partner that she would be permitted to take men upstairs only upon condition that such payments, designated as "room rent," were made; that this was in addition to the regular room rent paid by the woman for her room, and was paid whether the men were taken to the woman's room or to another; that these amounts were paid either by the woman with money given to her by the men or directly by the men themselves. Her testimony with regard to the charge for taking men to the rooms, the manner and amount of the payments, and the general arrangement with the defendant and his partner and mode of operation was corroborated by another inmate of the house, one Myrtle Delaney, the woman who for a time shared the regular room of the prosecuting witness. There was also evidence that there were other female inmates of the place during this time, but under what arrangement with the proprietors did not appear. Other evidence will be noticed as may be necessary in the course of this opinion. Upon the whole evidence and the court's instructions, the jury returned a verdict of guilty as charged.

All of the evidence introduced by the state was strenuously contradicted by the defendant and his partner, but it is elementary that, if the state's evidence was sufficient to take the case to the jury, the verdict is conclusive upon us. The defendant moved to set aside the verdict and for a new trial. The motion was denied. The defendant moved in arrest of judgment, which was also denied. Exceptions were reserved to these rulings and to the admission and exclusion of evidence. Judgment was entered, sentence pronounced, and the defendant appealed.

I.   The appellant first assigns as error the refusal of
the court to sustain the demurrer to the information.   The
demurrer was upon the grounds, (1) that the information
did not substantially conform to the statute; (2) that it
charged more than one crime; (3) that the facts charged
did not constitute a crime.   The statute under which the in-
formation was filed, so far as material, reads as follows:

"Every person who   .   .   .   shall live with or accept any
earnings of a common prostitute, or entice or solicit any per-
son to go to a house of prostitution for any immoral purpose,
or to have sexual intercourse with a common prostitute, shall
be punished by imprisonment in the state penitentiary for
not more than five years or by a fine of not more than two
thousand dollars."   Rem. & Bal. Code, § 2440, subdiv. 5
(P. C. 135 § 375).

A reading of this statute makes it plain that the informa-
tion charged the crime practically in the words of the statute,
so far as applicable to the facts.   While it charged the of-
fense as being committed by two persons, it charged but a
single crime, and was therefore not vulnerable to attack for
duplicity.   It is manifest also that the facts charged, if
proven, constitute a crime under the express terms of the
statute.   The demurrer was properly overruled.

II.   On cross-examination of the prosecuting witness and
also other witnesses, who it is claimed heard her so state, the
appellant sought to prove that the prosecuting witness had,
subsequent to leaving the appellant's place, lived with another
man and paid him all of her earnings.   The exclusion of this
evidence is assigned as error.   The appellant contends that
it was admissible, first, as affecting the credibility of the wit-
ness, and second, as tending to show, as a motive on her part
in accusing the defendant, an intent to protect the other
man by diverting attention from him and a like offense with
which he was also charged.   Neither of these grounds is well
taken.   So far as the credibility of the prosecuting witness
could be affected by evidence of her unchastity and immoral-

ity, that evidence had already been admitted. She was a common prostitute and had so testified. Evidence that she lived with another man, even at the time charged in the information, unless she paid all of her earnings to such other man, would be at most only cumulative as to her unchaste character and would not otherwise tend to discredit her testimony. The court excluded the testimony on the ground that it referred to a time subsequent to her leaving the defendant's place, and did not tend to show that she paid all of her earnings to another during the time she remained at the defendant's place. There was no error in excluding the evidence on the first ground of the offer.

The second ground, namely, that the evidence was admissible as tending to show, as a motive, a diversion of attention from the offense charged against the other man, seems to us also untenable. The appellant relied mainly upon the case of *State v. Griffin*, 43 Wash. 591, 86 Pac. 951, in which it was the theory of the defense that the complaining witness charged the crime of statutory rape against the defendant in order to protect the real offender, and the court limited the consideration of the evidence of illicit relations with another to its tendency to account for her condition when examined by a physician, thus taking the theory of the defense from the jury. This was held error. The distinction between that case and this is patent. The fact that the complaining witness in the *Griffin* case had voluntarily submitted to illicit relations with another man than the defendant had some tendency to prove that the charge against the defendant was for the purpose of protecting the real culprit. The evidence offered in the case at bar would have no such tendency. The charge of the complaining witness that she paid a part of her earnings to the appellant would in no wise tend to disprove the fact, if it be a fact, that she, at a subsequent time, paid all of her earnings as a prostitute to another man. The evidence had no reasonable tendency to establish motive for the charge against the defendant. It was properly rejected.

III. It is next contended that the testimony of the prosecuting witness that the appellant had accepted any of her earnings was uncorroborated. The witness Myrtle Delaney corroborated the prosecuting witness in nearly every particular. The appellant contends that, because the Delaney woman was also an admitted prostitute, her evidence was not admissible. This, however, went to the credibility of her testimony rather than to its admissibility. *State v. Stone*, 66 Wash. 625, 120 Pac. 76. The statute touching corroboration, Rem. & Bal. Code, § 2443 (P. C. 135 § 381), does not render the testimony of a prostitute inadmissible. Nor does the fact that the Delaney woman also claimed to have been subjected to the same exactions as the prosecuting witness during her stay at the appellant's place render her testimony inadmissible in corroboration. *People v. Panyko*, 71 App. Div. 324, 75 N. Y. Supp. 945. Moreover, another witness testified that he on several occasions had paid money, either to the appellant or his partner, for going to the room with the prosecuting witness. Other witnesses testified to seeing the prosecuting witness around the restaurant and the lodging house, and there was also evidence tending to show that when the prosecuting witness had been arrested and was in jail for disorderly conduct with another man, the defendant sent her money. We think there was ample evidence in corroboration of the complaining witness to satisfy the statute. Its weight was for the jury.

IV. The court gave the following instructions:

"You are instructed that the crime of accepting the earnings of a prostitute is not committed by the acceptance of the earnings of a prostitute in exchange for food; clothing or shelter; but is only committed by the acceptance of such earnings as a gratuity, or with the intent to aid, assist or abet in her prostitution.

"But you are instructed that if you believe from the evidence beyond a reasonable doubt, that Mary Blakely, who is mentioned in the information, was, during the period mentioned in the information, a prostitute, and that the defend-

ant Christopher Columbus knowing her to be such and he himself or in partnership with Billie Liaskos was in charge of rooms and did enter into arrangement with the said Mary Blakely for her to use any such room or rooms for the purpose of holding intercourse with men, and to pay the said Christopher Columbus, or the said partnership, if one existed, the sum of fifty cents, or any other amount, for the use of such rooms for every man that she occupied such room with, then you are instructed that such sum received for the use of such rooms would be money received as the earnings of a prostitute, and you should find the defendant guilty as charged in the information."

The appellant contends that the latter of these instructions is erroneous, in that charging for the use of rooms to be used in prostitution does not constitute accepting the earnings of a prostitute within the meaning of Rem. & Bal. Code, § 2440 (P. C. 135 § 375), above quoted. It is argued that if it constitutes any offense, it is either that of keeping a house of ill-fame, under Rem. & Bal. Code, § 2904, or that of maintaining a common nuisance, under Rem. & Bal. Code, §§ 8319 and 8320 (P. C. 135 §§ 1551,1553). It is true that the evidence did tend to bring the defendant within the purview of these sections, but it also went much further. Keeping a house and renting rooms therein to prostitutes for their home and shelter, even with knowledge that they ply their vocation therein, where the only consideration paid is the stipulated room rent, regardless of the number of men entertained by the tenant, may be assumed for the purpose of this discussion merely to constitute the offense of keeping a house of ill fame or maintaining a common nuisance, and punishable as such only under the three last cited sections of the code; but the evidence here, if believed, shows not only the case we have assumed, but something more and very different from the case assumed. The distinction was recognized by the trial court, and is clearly apparent from a comparison of the two instructions above quoted.

The evidence here shows a direct participation by the ap-

pellant in the negotiations for, and in the payment made in consideration of, each separate act of prostitution. The extra payment over and above the ordinary room rent of the prostitute was not room rent in any just sense of the term. It was pay in a specific sum for the privilege of each specific act of prostitution committed by the prostitute on the premises, whether performed in the prostitute's own room or, if more convenient, in another. The use of the room for which this extra payment was exacted was merely incidental to the particular act of prostitution. The sole moving consideration to the prostitute's customer, whether paid directly to the appellant by the customer or by the prostitute with money received from her customer, was the specific act of prostitution then performed by her. She earned it to the same extent and by the same act by which she earned the money paid to her for the same performance. The acceptance of it by the defendant was the acceptance of a part of her earnings as a common prostitute. It was a tribute levied on her earnings in consideration of prostitution alone. This is clear, since it was exacted whether she used her own room for which she had already paid or another for the specific act. It clearly falls within the ban of the statute against accepting "any earnings of a common prostitute." Any other view would render the statute so easily evaded by the shallow subterfuge of room rent as to make it a dead letter. We find no error in this instruction as applied to the evidence.

V. These considerations effectually dispose of the further claim that the court erred in refusing to direct an acquittal for insufficiency of the evidence to establish the crime charged, and also of the claim of error in the court's refusal to grant the appellant's motion in arrest of judgment.

VI. The motion for new trial was based upon grounds as follows: (1) error of law occurring at the trial excepted to by the defendant; (2) that the verdict was contrary to the law and the evidence; (3) misconduct of the jury consisting of passion and prejudice; (4) fatal variance between

the allegations of the information and the proof. What we have already said disposes of all of these grounds save the third, and that is not sustained by the record. It was the province of the jury to weigh the evidence. The testimony of the prosecuting witness tended to establish every element of the crime charged. It was so amply corroborated as to leave no doubt of its truth if the other witnesses for the state were believed. Their credibility was for the jury. If the jurymen believed this evidence, it was their duty to convict. That they did believe it is no mark of passion or prejudice and none other is pointed out. The trial court having denied the motion in arrest of judgment and refused a new trial, we must decline to interfere. *State v. Bailey*, 31 Wash. 89, 71 Pac. 715; *State v. Murphy*, 15 Wash. 98, 45 Pac. 729; *State v. Kroenert*, 13 Wash. 644, 43 Pac. 867; *State v. Coates*, 22 Wash. 601, 61 Pac. 726; *State v. Bailey*, 67 Wash. 336, 121 Pac. 821; 12 Cyc. 906, 907, 908.

The judgment is affirmed.

MORRIS, MAIN, and FULLERTON, JJ., concur.